JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-1478 JGB (KKx)** | Date | November 15, 2021 |
|---|---|---|---|
| Title | ***Elizabeth Khaled v. Library Systems and Services, LLC*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):

David G. Spivak (via Zoom)

Attorney(s) Present for Defendant(s):

Amanda C. Sommerfeld (via Zoom)

**Proceedings:**    **Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 36); and GRANTING IN PART AND DENYING IN PART Plaintiff's Motion for Attorneys' Fees, Costs, and Class Representative Enhancement Payments.  (Dkt. No. 37.)**

Before the Court is Plaintiff Elizabeth Khaled's ("Plaintiff") unopposed motions for final approval of class action settlement ("MFA," Dkt. No. 36) and for attorneys' fees, expenses, and service awards ("Fee Motion," Dkt. No. 37) (collectively, the "Motions").  The Court held a final approval hearing on November 15, 2021.  Upon consideration of the papers filed in support of the Motions, as well as oral argument, the Court GRANTS the MFA and GRANTS IN PART AND DENIES IN PART the Fee Motion.

## I.  BACKGROUND

On June 4, 2019, Ms. Khaled commenced this action in the Superior Court of California for the County of Riverside against Defendants Library Systems & Services, LLC and Does 1 through 50 ("Defendants").  ("Complaint," Dkt. No. 1-1.)  The Complaint alleges seven causes of action: (1) failure to provide rest breaks in violation of Cal. Lab. Code §§ 226.7 and 1198; (2) failure to provide meal periods in violation of Cal. Lab. Code §§ 226.7, 512, and 1198; (3) failure to pay employees all wages for all hours worked at correct rates of pay in violation of Cal. Lab. Code §§ 510, 1194, 1197, and 1198; (4) failure to provide accurate, written wage statements in violation of Cal. Lab. Code § 226; (5) waiting time penalties pursuant to Cal. Lab. Code §§ 201-203; (6) unfair competition in violation of Cal. Bus. & Prof. Code § 17200, et seq.; and (7) civil penalties pursuant to Cal. Lab. Code § 2699(a).  (See Compl.)  On August 8, 2019, Defendants removed the action to federal court.  ("Notice of Removal," Dkt. No. 1.)

On September 29, 2020, Ms. Khaled moved for preliminary approval of class action settlement. ("MPA," Dkt. No. 25.)  On November 6, 2020, the Court denied the First MPA due to concerns regarding the settlement amount, extent of discovery, incentive award, and attorney's fees. ("MPA Order," Dkt. No. 29.)

On April 14, 2021, Ms. Khaled filed an unopposed, renewed motion for preliminary approval of class action settlement. ("Renewed MPA," Dkt. No. 32.)  The Court granted the Renewed MPA on May 14, 2021. ("Renewed MPA Order," Dkt. No. 35.)  In the Renewed MPA Order, the Court certified a Settlement Class; appointed David Spivak of The Spivak Law Firm and Walter Haines of United Employees Law Group as Class Counsel; appointed Ms. Khaled as class representative; appointed CPT Group, Inc. as the settlement administrator; approved the requisite Class Notice form; and authorized the distribution of Class Notice forms. (Id. at 11.)  The Court set the final fairness hearing for Monday, November 15, 2021 at 9:00 a.m. (Id.)

On October 18, 2021, Ms. Khaled filed the MFA and included the following documents in support:

- Memorandum of Law in Support of the MFA ("MFA Memorandum," Dkt. No. 36-1);
- Declaration of Jeremy Talavera on behalf of CPT Group, Inc. ("Talavera Declaration," Dkt. No. 36-2);
- Declaration of David Spivak in Support of the MFA with various exhibits ("Spivak MFA Declaration," Dkt. No. 36-3); and
- Renewed MPA Order.

On October 18, 2021, Ms. Khaled also filed the Fee Motion with the following documents in support:

- Declaration of Walter Haines in Support of the Fee Motion ("Haines Declaration," Dkt. No. 37-2);
- Declaration of David Spivak in Support of the Fee Motion with various exhibits ("Spivak Fee Motion Declaration," Dkt. No. 37-3); and
- Declaration of Ms. Khaled in Support of the Fee Motion ("Khaled Declaration," Dkt. No. 37-4).

On October 25, 2021, Defendant Library Systems & Services, LLC ("LSS") filed statements of non-opposition to the MFA and the Fee Motion. ("MFA Non-Opposition," Dkt. No. 39; "Fee Motion Non-Opposition," Dkt. No. 40.)

//
//
//
//
//

## II.  THE SETTLEMENT AGREEMENT

Ms. Khaled and LSS finalized and executed the class action settlement agreement on August 19, 2020.  ("Agreement," Dkt. No. 36-3, Ex. 1.)  The Agreement terms are described below.

### A.  Settlement Summary

The financial terms of the Agreement are as follows:

- Gross settlement amount:                                $450,000
- Attorneys' fees:                                              $150,000
- Costs not to exceed:                                       $18,000
- LWDA share of PAGA penalties                        $7,500
- Total service award for class representative:      $15,000
- Administration costs not to exceed:                  $17,500
- Estimated net settlement:                                 $242,000

The gross settlement amount of $450,000 is non-reversionary.  Any checks issued to settlement class members shall remain valid and negotiable for 180 days from the date of issuance.  (Id. ¶ 10(d).)  Checks that remain uncashed and otherwise unclaimed will be disbursed to the California State Controller's Unclaimed Property Fund.  (Id.)

### B.  Financial Terms

#### 1.  Settlement Class Members

"Settlement Class Members" is defined as "all persons employed by Defendant in California as non-exempt employees at any time during the Settlement Class Period who do not Opt-Out of the settlement and thus who are bound by the Release."  (Agreement ¶ 7(hh).)  The Settlement Class Period is from June 4, 2015 through May 14, 2021, "the date of the Court's order preliminarily approving this Settlement."  (Id. ¶ 7(ii).)  Each Class Member will be paid a pro rata share of the net settlement based on the number of weeks they worked for Defendant during the Class Period, divided by the total number of work weeks worked by all Class Members during that period.  (Id. ¶¶ 7(ii), 10.)  Forty percent of the settlement award will be treated as wages and subject to withholdings.  (Id. ¶ 10(b).)

The final class list consisted of 1,295 individuals.  (Talavera Decl. ¶ 5.)  Because six Settlement Class Members have requested exclusion from the Agreement, there are 1,289 participating Settlement Class Members as of August 18, 2021.  (Id. ¶ 14.)

//
//
//

### 2. Payment and Distribution of Funds

LSS will provide the gross settlement amount to CPT Group, Inc. ("CPT Group"), the Class Administrator, within thirty calendar days of the settlement effective date. (Agreement ¶¶ 7(c), 8(b).) The settlement effective date is defined as:

> [T]en (10) calendar days after either (a) if no objections are timely filed, the Final Approval Date; (b) if objections are filed but no appeal is filed, the expiration date of the time for filing notice of any appeal from Final Approval Date; or (c) if an appeal is filed, the latest of (i) the date of final affirmance of an appeal of that Final Approval Order, (ii) the expiration of the time for a petition for review or writ of certiorari with respect to the Final Approval Order and, if review or certiorari is granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iii) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on review or certiorari with respect to the Final Approval Order that has the effect of confirming the Final Approval Order.

(Id. ¶ 7(m).) CPT Group will transfer the funds into a Qualified Settlement Fund Account ("QSF"). (Id. ¶ 8(c).) CPT Group will then issue settlement awards to the Settlement Class Members within ten days of the settlement effective date. (Id. ¶ 10(a).) CPT Group will also issue payments for the incentive award, Class Counsel's fees and costs, Claims Administration costs, and the PAGA Payment within ten days of the deposit. (Id. ¶ 9.) As noted above, settlement awards that go uncashed or otherwise unclaimed within 180 days from issuance will be disbursed to the California State Controller's Unclaimed Property Fund. (Id. ¶ 10(d).)

### 3. Class Representative

The Agreement provides for an incentive award of $15,000.00 to Ms. Khaled for her efforts in bringing and prosecuting this matter and the risks she undertook. (Fee Mot. at 14–19; Agreement ¶ 9(a).) Ms. Khaled also agrees to a more general release than the Settlement Class Members. (Fee Mot. at 14–15; Agreement ¶ 9(a).)

### 4. California Labor and Workforce Development Agency Payment

The Agreement allocates $10,000.00 of the gross settlement to PAGA penalties ("PAGA Payment"). (MFA Mem. at 1; Agreement ¶ 9(d).) Seventy-five percent (75%) of the PAGA Payment, or $7,500.00, shall be paid to the California Labor and Workforce Development Agency ("LWDA"), and the remaining twenty-five percent (25%), or $2,500.00, will become part of the net settlement amount distributed to Settlement Class Members. (Agreement ¶ 9(d).)

//
//
//

**5. Settlement Administration Costs**

The Court appointed CPT Group as the settlement administrator. (MPA Order at 11.)
The Agreement allocates $17,500.00 to administer the settlement. (Agreement ¶ 9(c).) If the
final cost of administration is less than the $17,500.00 cap, then the remainder will become part
of the net settlement amount to be distributed to the Settlement Class Members. (Id.) Upon the
Court's approval of administration costs, CPT Group will pay itself the approved amount within
ten calendar days of the deposit of the gross settlement amount. (Id.) CPT Group seeks the full
$17,500.00 for final settlement administration costs. (Fee Mot. at 13–14; Talavera Decl. ¶ 15.)

**6. Attorneys' Fees and Costs**

Class Counsel request an award of attorneys' fees in the amount of $150,000.00, or
33.33% of the gross settlement amount. (Fee Mot. at 3.) This is the maximum amount authorized
in the Agreement. (Agreement ¶ 9(b).) Class Counsel also request reimbursement for litigation
costs in the amount of $12,745.88, which is less than the $18,000.00 authorized by the
Agreement. (Fee Mot. at 13–14; Agreement ¶ 9(b).) Under the Agreement, this remainder will
become part of the net settlement amount and distributed to the Settlement Class Members.
(Agreement ¶ 9(b)(ii).) CPT Group will pay the approved attorneys' fees and costs. (Id.)

**C. Injunctive Relief**

The Agreement does not include any injunctive relief, but reserves LSS's right to enforce
the Agreement's prohibition against publicizing the Agreement through an action for injunctive
relief. (Agreement ¶ 36.)

**D. Release**

All Settlement Class Members who do not request exclusion agree to release:

> any and all claims, rights, demands, liabilities, and causes of action of any kind,
> whether known or unknown, arising from the facts pleaded in the operative
> complaint, including any violation of common law, California law and/or federal
> law which was or could have been raised in Plaintiff's operative complaint based
> on the facts pleaded, including but not limited to claims based on the Fair Labor
> Standards Act (29 U.S.C. §§ 201 et seq.), California Labor Code sections 201,
> 202, 203, 204, 204.3, 206.5, 210, 218.5, 223, 226, 226.3, 226.7, 510, 512, 558, 1174,
> 1194, 1194.2, 1197, 1197.1, 1198, and 2698, et seq., California Code of Regulations,
> Title 8 Section 11000 et seq., the applicable Industrial Welfare Commission
> (IWC) Wage Orders, Business & Professions Code sections 17200, et seq., or any
> related damages, penalties, restitution, disgorgement, interest or attorneys' fees,
> and that arose on or before the Effective Date[.]

**CIVIL MINUTES—GENERAL**          Initials of Deputy Clerk MG
Time:  00:08

("Release"). (Agreement ¶ 7(h), § IV.) In addition, Ms. Khaled agrees to a general release of all claims, including a waiver under Cal. Civil Code § 1542, and agrees not to seek employment or re-employment with LSS in any capacity at any time. (Id. ¶¶ 7(y), 9(a)(i)-(ii), § IV.)

**E. Notice**

In the Renewed MPA Order, the Court authorized notice of the Agreement to be distributed to Class Members pursuant to the following procedures: LSS will provide the names, addresses, telephone numbers, and employment information of the Settlement Class Members ("Class List") to CPT Group within fourteen days after the Renewed MPA Order (Renewed MPA Order at 6; Agreement ¶¶ 7(f), 18(b).) CPT Group will advise the parties about the total number of Settlement Class Members and the total number of workweeks on the Class List. (Agreement ¶ 18(c).) No later than twenty-eight calendar days after the Renewed MPA Order, CPT Group will send a Notice packet to each class member via first-class mail using the most current mailing information in the Class List. (Id. ¶ 18(e).) Each Notice packet will include the Class Notice and Opt-Out Form with prepaid postage. (Id. ¶ 7(t).) Any Notice packet returned as undeliverable before the expiration of the opt-out period will be sent to the forwarding address. (Id. ¶ 18(f).) If no forwarding address is available, CPT Group will perform a skip trace search and re-mail the Notice packet. (Id.)

The Notice will reflect the number of weeks worked by each Settlement Class Member, as well as an explanation of how they can dispute that information. ("Class Notice," Agreement, Ex. A; Agreement ¶¶ 7(g), 10(c).) Settlement Class Members will have forty-five days after the initial mailing of the Notice packets to request exclusion from the proposed settlement. (Agreement ¶¶ 7(v), 20.) The deadline to object or opt-out will not be extended for Settlement Class Members who receive a re-mailed Notice packet. (Id. ¶ 18(g).)

LSS timely provided CPT with the Class List on May 28, 2021, fourteen days after the Renewed MPA Order. (MFA Mem. at 3; Talavera Decl. ¶ 5.) The finalized Class List contained 1,295 Settlement Class Members (Talavera Decl. ¶ 5.) After conducting a National Change of Address search to locate any updated addresses, CPT Group mailed the Notice packets on June 1, 2021. (Id. ¶¶ 6–7.) Thirty-six Notice packets were returned as undeliverable; CPT Group has re-mailed thirty-two Notice packets to either a forwarding address or an address found by skip-tracing. (Id. ¶¶ 8–9.) As of August 18, 2021, five Notice packets remain undeliverable due to the lack of a forwarding address or because the skip trace could not identify a new address. (Id. ¶ 9.)

The deadline for Settlement Class Members to object or opt out of the Agreement, as well as to dispute the number of weeks worked, was July 26, 2021. (Id. ¶ 10.) As of August 18, 2021, CPT Group did not receive any objections or disputes regarding workweeks. (Id. ¶¶ 11–12.) CPT Group did receive six timely requests for exclusion. (Id. ¶ 13.) At the final fairness hearing, Class Counsel confirmed that this remained the case.

//
//

## III.  LEGAL STANDARD

### A.  Class Action Settlement

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).
Whether to approve a class action settlement is "committed to the sound discretion of the trial
judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy
favors settlement of class actions.  Id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness.
Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing
Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Neither district courts nor
appellate courts have the power to delete, modify, or substitute provisions in the negotiated
settlement agreement.  Hanlon, 150 F.3d at 1026.  "The settlement must stand or fall in its
entirety."  Id.

In order to approve a class action settlement, the Court must conduct a three-step
inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it
assesses whether the parties have met notice requirements under the Class Action Fairness Act.
Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure
23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is
fair, reasonable, and adequate under Rule 23(e)(2).  Id.

### B.  Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2) of the Federal
Rules of Civil Procedure.  While the rule specifies that requests shall be made by motion "unless
the substantive law governing the action provides for the recovery of . . . fees as an element of
damages to be proved at trial," the rule does not itself authorize the awarding of fees.  "Rather,
[Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must
be another source of authority for such an award . . . [in order to] give [] effect to the 'American
Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute or
contract authorizing such an award."  MRO Commc'ns, Inc. v. AT&T Co., 197 F.3d 1276, 1281
(9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American
Rule" provide that authority for awarding attorneys' fees.  See Newberg on Class Actions § 14.1
(4th ed. 2005) ("Two significant exceptions [to the 'American Rule'] are statutory fee-shifting
provisions and the equitable common-fund doctrine.").  Rule 23(h) authorizes a court to award
"reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties'
agreement."  Fed. R. Civ. P. 23(h).  Under normal circumstances, once it is established that a
party is entitle to attorneys' fees, "[i]t remains for the district court to determine what fee is
'reasonable.'"  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk MG
Time:  00:08

## IV.  DISCUSSION

### A.  Class Action Fairness Act ("CAFA")

The parties invoke federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (MFA Mem. at 4–5.)  CAFA requires the following:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official . . . .

28 U.S.C. § 1715(b).  The statute provides detailed requirements for the contents of such notice.  Id.  A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

LSS provided CAFA notice on August 6, 2021.[1]  (MFA Mem. at 4; "CAFA Notice," Spivak Decl., Ex. 3.)  The CAFA Notice was sent to the Attorneys General of each of the twenty-five states in which Settlement Class Members reside and the Office of the Attorney General of the United States.  (See CAFA Notice; Spivak Decl. ¶ 6.)  Accordingly, the Court finds that the CAFA notice requirements have been satisfied.

### B.  Rule 23(a) and (b) Requirements

In the Renewed MPA Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  (Renewed MPA Order at 6, 11.)  The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)."  Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); see also Harris v. Vector Marketing, 2012 WL 381202, at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Sec. Litig., 2012 WL

---

[1] According to Class Counsel, "Defendant's Counsel issued the required notice on October 8, 2021 and an amended notice on August 6, 2021."  (MFA Mem. at 4.)  This statement is confusing.  Because the attached CAFA Notice is dated August 6, 2021, the Court uses August 6, 2021 as the date CAFA notice was provided.

CIVIL MINUTES—GENERAL  Initials of Deputy Clerk MG
Time:  00:08

1378677, at *4 (D. Ariz. Apr. 20, 2012).  Here, the Settlement Class has not changed since it was conditionally certified.  (MFA at 5.)  All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

## C.  Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1).

As discussed above, Class Counsel and CPT Group represent that they have completed notice for the Agreement in accordance with the procedures approved by the Court.  (MFA Mem. at 3–4; Talavera Decl. ¶¶ 3–14.)  As of August 18, 2021, five Notice packets remain undeliverable due to the lack of a forwarding address or because the skip trace could not identify a new address.  (Talavera Decl. ¶ 9.)  CPT Group has not received any objections to the Agreement or disputes regarding the calculation of weeks worked for individual Class Members. (Talavera Decl. ¶¶ 11–12.)  CPT Group has received six opt-out requests.  (Id. ¶ 13.)  At the November 15, 2021, Class Counsel confirmed that there had not been any objections or additional exclusions.  Accordingly, the Court concludes that the Notice provided was the best notice practicable under the circumstances.  This factor weighs in favor of final approval.

## D.  Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled … only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv., 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;
(2) the risk, expense, complexity, and likely duration of further litigation;
(3) the risk of maintaining class action status throughout the trial;
(4) the amount offered in settlement;
(5) the extent of discovery completed, and the stage of the proceedings;
(6) the experience and views of counsel;
(7) the presence of a governmental participant; and
(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998).  This list of factors is not
exhaustive, and a court may balance and weigh different factors depending on the circumstances
of each case.  See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

The Court notes that the MFA does not address most of the above factors.  Accordingly,
where applicable, the Court references the Renewed MPA, which provided a detailed discussion
of some of the factors.

### 1.  Strength of Plaintiff's Case

The initial fairness factor addresses the strength of Ms. Khaled's case.  See Rodriguez v.
W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009).  In determining the strength of her case,
there is no "particular formula by which that outcome must be tested."  Id. at 965.

In the Renewed MPA, Ms. Khaled highlights several barriers to prevailing on her claims.
Ms. Khaled's primary of theory of recovery is that LSS had an unlawful compensatory time
policy by which it paid for overtime hours at only regular rates of pay.  (Renewed MPA at 27.)
Ms. Khaled notes a lack of comp time accrual records among Class Members that posed a
significant challenge to proving this claim.  (Id.)  Moreover, an analysis of LSS's sample time
records show that the average Class Member would not suffer a commensurate underpayment of
overtime wages.  (Id. at 28.)  Ms. Khaled also identifies difficulties to proving her meal and rest
period class claims.  Initial investigation revealed not only that violations of the meal and rest
period policies occur infrequently, but also that LSS's rest period policies appear compliant with
the California Labor Code and Wage Order.  (Id. at 29–31.)  Further, some authorities support
LSS's position that such violations will not give rise to violations of wage statement requirements
under Section 226 of the California Labor Code.  (Id. at 31.)  Finally, Ms. Khaled acknowledges
the amount of recoverable civil penalties under PAGA had been substantially overvalued.  (Id. at
31–32.)  Under these facts, the Court finds that Ms. Khaled's case is not particularly strong.
Accordingly, this factor weighs in favor of granting final approval.

### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

To assess the risk, complexity, and likely duration of further litigation, the Court
evaluates the time and cost required.  "[U]nless the settlement is clearly inadequate, its
acceptance and approval are preferable to lengthy and expensive litigation with uncertain
results."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal.
2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Ms. Khaled reached settlement after considering many risks associated with continuing
litigation.  As noted above, one significant challenge with each of Ms. Khaled's claims is a lack of
documentation.  While she may prove her case through testimonial evidence and witness
declarations, these processes are time-consuming, not always accurate, and present risks to the
manageability of the lawsuit as a class action at trial.  (Renewed MPA at 27, 29–31.)  The claim

for civil penalties under PAGA also faces the risk that the Court could reduce the penalties if it
was unpersuaded that LSS intentionally violated the law or to avoid a confiscatory taking. (Id. at
33–34.) Ms. Khaled assert the Court could even strike the PAGA claim as unmanageable. (Id.)

The Court notes that without the Agreement, the parties would be required to litigate
class certification, as well as the ultimate merits of the case. Such a process is long and
expensive. Accordingly, in light of these risks, the expense and duration of further litigation, and
the uncertain likelihood of success on the merits, the Court concludes that this factor weighs in
favor of final approval.

### 3. Amount Offered in Settlement

To determine whether the amount offered in settlement is fair, a court compares the
settlement amount to the parties' estimates of the maximum amount of damages recoverable in a
successful litigation. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000). "Even
a fractional recovery of the possible maximum recovery amount may be fair and adequate in light
of the uncertainties of trial and difficulties in proving the case." Millan v. Cascade Water Servs.,
310 F.R.D. 593, 611 (E.D. Cal. 2015).

The gross settlement amount is $450,000.00. As discussed in the Renewed MPA Order,
the gross settlement represents approximately ten percent (10%) of LSS's maximum exposure.
(Renewed MPA Order at 8.) This recovery amount is consistent with amounts routinely found
to be fair and reasonable. In re Mego, 213 F.3d at 459 (permitting settlement amount that was
one-sixth of potential recovery); Deaver v. Compass Bank, 2015 WL 8526982, at *7 (N.D. Cal.
Dec. 11, 2015) (approving a settlement that was 10.7% of the total potential liability).

Payments to Settlement Class Members are determined on a pro rata basis based on the
number of weeks worked. According to CPT Group, the lowest payment to a participating Class
Member is $0.22, while the highest payment to a participating Class Member is estimated at
$485.79. (Talavera Decl. ¶ 14.) The average payment to each Settlement Class Member is
estimated at $187.74. (Id.; MFA Mem. at 8.)

In light of the difficulties Ms. Khaled would face if she continued to litigate this case, the
Court finds that the settlement amount offered is reasonable and the Agreement provides
meaningful relief to Class Members. Accordingly, this factor weighs in favor of approval.

### 4. Extent of Discovery Completed, and the Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient
information to make an informed decision about settlement." Linney, 151 F.3d at 1239. "The
parties must … have engaged in sufficient investigation of the facts to enable the court to
intelligently make an appraisal of the settlement." Acosta v. Trans Union, LLC, 243 F.R.D. 377,
396 (C.D. Cal. 2007) (internal quotation marks omitted).

Here, the parties engaged in discovery prior to mediation. (Renewed MPA at 3–4, 23–24)
The Parties issued interrogatories and requested documents for production. (Renewed MPA at
4.) Pertinently, LSS provided, and Ms. Khaled reviewed, written policies, as well as time punch
and payroll data for a randomized sample of approximately twenty percent (20%) of the Class, or
233 individual Class Members. (Id. at 4, 23–24.) Ms. Khaled received assistance from a data
analyst to evaluate the data and to determine the extent of LSS's alleged wage violations. (Id. at
24.) Ms. Khaled also interviewed twenty-eight current and former employees to assess the
frequency of compensatory time accrual and use and extent of alleged meal and rest period
violations. (Id.) These interviews revealed that such violations occur infrequently and led Ms.
Khaled to decrease her estimate of LSS's maximum exposure. (Id.) Collectively, this
information allowed Class Counsel to prepare damages estimates in advance of the mediation.
(Id. at 24–25.)

The parties also participated in mediation with the Honorable Michael Latin on April 13,
2020. (Id. at 3–4.) The parties reached the material terms of the Agreement at the conclusion of
mediation. (Id. at 4.)

Based on this information, it appears that each side maintains a clear idea of the strengths
and weaknesses of their respective cases. Accordingly, the Court concludes that the extent of
discovery completed and the stage of the proceedings weigh in favor of final approval. See Lewis
v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class
action settlement is proper as long as discovery allowed the parties to form a clear view of the
strengths and weaknesses of their cases.").

### 5. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely
acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v.
DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks
omitted). Here, Class Counsel attest that the Agreement is "fair, adequate, and reasonable."
(Spivak MFA Decl. ¶ 8; Haines Decl. ¶ 12.) Class Counsel have extensive experience in wage
and hour class actions. (Spivak Fee Mot. Decl. ¶ 10; Haines Decl. ¶ 2.) Accordingly, the Court
concludes this factor weighs in favor of final approval.

### 6. Presence of Government Participant

No governmental entity is present in this litigation. This factor is thus neutral.

//
//
//
//
//
//

### 7. Opposition by Class Members

The existence of overwhelming support for a settlement agreement by the class lends weight to a finding that the settlement agreement is fair, adequate, and reasonable.  <u>DIRECTV, Inc.</u>, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  Here, CPT Group provided Class Notice to 1,295 Settlement Class Members.  (Talavera Decl. ¶¶ 5, 7.)  After re-mailing any undelivered Notice packets to a forwarding address or a new address identified by skip trace, only five Notice packets remain undeliverable.  (<u>Id.</u> ¶¶ 8–9.)  As of August 18, 2021, CPT Group has not received any objections to the Agreement or disputes about the calculation of weeks worked.  (<u>Id.</u> ¶¶ 11–12.)  CPT Group has received six opt out requests.  (<u>Id.</u> ¶ 13.)  At the final fairness hearing, Class Counsel confirmed that this remained the case.  In light of the lack of objections and the Notice provided, the Court concludes that this factor weighs in favor of approval.

## E.  Attorneys' Fees and Costs

### 1.  Attorneys' Fees

Class Counsel request approval of $150,000.00 in attorneys' fees, the maximum amount authorized in the Agreement.  (Fee Mot. at 3; Agreement ¶ 9(b).)  Courts are obligated to ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount.  <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 941 (9th Cir. 2011).  The Court, in its discretion, may award attorneys' fees in a class action by applying either the percentage-of-the-fund method or the lodestar method.  <u>Fischel v. Equitable Life Assurance Soc'y</u>, 307 F.3d 997, 1006 (9th Cir. 2002).

Under the percentage-of-the-fund method, the requested attorneys' fee award represents 33.33% of the total gross settlement amount.  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees."  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998).  This benchmark can be adjusted upward or downward "based on the circumstances in the record."  <u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing <u>Six (6) Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).  In the Renewed MPA Order, the Court noted that the requested fees may be potentially reasonable but expressed some skepticism that the circumstances justified an increase of the 25% benchmark.  Accordingly, the Court applies the lodestar method to cross-check the reasonableness of the percentage of the fund.

The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  <u>McGrath v. County of Nevada</u>, 67 F.3d 248, 252 (9th Cir. 1995).  The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  <u>Blum v. Stenson</u>, 465 U.S. 866, 895 n.11 (1984).  Next, the Court must decide whether to adjust the "presumptively reasonable" lodestar figure

based upon the factors listed in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69–70 (9th Cir. 1975), <u>abrogated on other grounds by City of Burlington v. Dague</u>, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation.  <u>See</u> <u>Caudle v. Bristow Optical Co., Inc.</u>, 224 F.3d 1014, 1028–29 (9th Cir. 2000).[2]

Class Counsel calculate the following subtotals:

| The Spivak Law Firm | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Attorney | David Spivak | 70.95 | $700.00 | $49,665.00[3] |
| Attorney | Johnny D. Griggs | 8.33 | $750.00 | $6,247.50[4] |
| Attorney | Oliva Burgos | 6.50 | $650.00 | $4,225.00 |
| Attorney | Caroline Tahmassian | 18.42 | $450.00 | $8,289.00[5] |
| Attorney | Gregory Wilbur | 7.54 | $450.00 | $3,393.00 |
| Attorney | Shoshana Essakhar | 4.22 | $450.00 | $1,899.00 |
| Attorney | Carl Kaplan | 111.77 | $250.00 | $27,942.50 |
| Paralegal | Breck Oyama | 15.97 | $300.00 | $4,791.00[6] |
| Paralegal | Nora Greer | 91.45 | $200.00 | $18,290.00 |

---

[2] In <u>Kerr</u>, the Ninth Circuit adopted the test articulated in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), which identified twelve factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  <u>Kerr</u>, 526 F.2d at 70.

[3] Class Counsel calculate Mr. Spivak's lodestar as $49,667.33.  (Spivak Fee Mot. Decl., Ex. F at 11.)  However, when the Court multiples 70.95 hours by $700.00, the total is $49,665.00.  Accordingly, the Court uses $49,665.00 as Mr. Spivak's lodestar.

[4] Class Counsel calculate Mr. Griggs's lodestar as $6,250.00.  (Spivak Fee Mot. Decl., Ex. F at 11.)  However, when the Court multiples 8.33 hours by $750.00, the total is $6,247.50.  Accordingly, the Court uses $6,247.50 as Mr. Griggs's lodestar.

[5] Class Counsel calculate Ms. Tahmassian's lodestar as $8,287.50.  (Spivak Fee Mot. Decl., Ex. F at 11.)  However, when the Court multiples 18.42 hours by $450.00, the total is $8,289.00.  Accordingly, the Court uses $8,289.00 as Ms. Tahmassian's lodestar.

[6] Class Counsel calculate Mr. Oyama's lodestar as $4,792.00.  (Spivak Fee Mot. Decl., Ex. F at 11.)  However, when the Court multiples 15.97 hours by $300.00, the total is $4,791.00.  Accordingly, the Court uses $4,791.00 as Mr. Oyama's lodestar.

| | | | | |
|---|---|---|---|---|
| Paralegal | Lizzett Cortez | 1.98 | $250.00 | $495.00[7] |
| Paralegal | Liz Reuben | 0.75 | $200.00 | $150.00 |
| Law Clerk | Akshay Arora | 13.91 | $200.00 | $2,782.00 |
| Legal Secretary | April Rivera | 0.33 | $150.00 | $49.50[8] |
| Legal Secretary | Angelica Raya | 1.75 | $150.00 | $262.50 |
| Legal Secretary | Jessica Bencomo | 0.24 | $150.00 | $36.00 |
| Legal Secretary | Silvia Kirollos | 0.33 | $150.00 | $49.50 |
| **Total** | | **354.44[9]** | | **$128,566.50[10]** |
| **United Employees Law Group** | | **Hours** | **Hourly Rate** | **Lodestar** |
| Senior Attorney | Walter Haines | 41.0 | $675.0 | $27,675.00[11] |
| **Total for All Firms** | | **395.44[12]** | | **$156,241.50[13]** |

("Timesheets," Spivak Fee Mot. Decl., Ex. F at 11; Haines Decl. ¶¶ 6–8.)

### a. Hourly Rates

When determining the reasonableness of an hourly rate, the court "does not look to the actual rate charged by the attorney," but is "guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Quevedo v. New Albertsons, Inc., 2015 WL 10939716, at *4 (C.D. Cal. May 27, 2015).

[7] Class Counsel calculate Ms. Cortez's lodestar as $495.83. (Spivak Fee Mot. Decl., Ex. F at 11.) However, when the Court multiplies 1.98 hours by $250.00, the total is $495.00. Accordingly, the Court uses $495.00 as Ms. Cortez's lodestar.

[8] Class Counsel calculate Ms. Rivera's lodestar as $50.00. (Spivak Fee Mot. Decl., Ex. F at 11.) However, when the Court multiples 0.33 hours by $150.00, the total is $49.50. Accordingly, the Court uses $49.50 as Ms. Rivera's lodestar.

[9] Class Counsel state that the Spivak Law Firm has expended 354.45 hours on this litigation. (Spivak Fee Mot. Decl. ¶ 18–19, Id., Ex. F at 11.) However, the Court's own calculations show that the total hours for the Spivak Law Firm is 354.44 hours. Accordingly, the Court uses 354.44 hours in its lodestar calculation.

[10] Class Counsel calculate the Spivak Law Firm's lodestar as $128,572.17. (Spivak Decl. ¶ 19.) However, because of the multiple errors noted above in the Spivak Law Firm's calculations, the Court adjusts the requested lodestar to $128,566.50.

[11] The Court notes that the Spivak Law Firm's lodestar calculations report the United Employees Law Group's hours at 34.80 hours and the pre-multiplier lodestar as $23,490.00. (Spivak Fee Mot. Decl., Ex. F at 11.) Because the Haines Declaration reports Mr. Haines's time at 41.00 hours and the pre-multiplier lodestar as $27,675.00, the Court uses these figures instead.

[12] The total number of hours reflects the Court's calculation based on the hours reported.

[13] This total lodestar amount reflects the Court's calculations based on the hours reported and the hourly rates provided.

Class Counsel request rates between $650 and $750 per hour for Ms. Burgos, Mr. Griggs, Mr. Spivak, and Mr. Haines. Ms. Burgos and Mr. Spivak have practiced for over 23 years and 25 years, respectively, while Mr. Griggs and Mr. Haines have practiced for over 36 years and 40 years, respectively. (Timesheets at 11; Haines Decl. ¶ 2.) Mr. Haines is the most senior attorney at United Employees Law Group. (Haines Decl. ¶ 2.)

The Court consults the 2020 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices ("Real Rate Report"). See Relman Colfax PLLC v. Fair Housing Council, 2021 WL 1895905, at *4–5 (C.D. Cal. Mar. 16, 2021) ("Courts have found that the Real Rate Report is 'a much better reflection of true market rates than self-reported rates in all practice areas.'") The Real Rate Report shows that partners in Los Angeles, California who have twenty-one years or more of experience have a median rate of $731 per hour, with partners in the third quartile earning $1,047 per hour. (Real Rate Report at 34.) Partners who practice employment and labor law in Los Angeles have a median hourly rate of $610 per hour, while partners in the third quartile earn $753 per hour. (Id. at 74.) Accordingly, the Court finds that the requested rates for Ms. Burgos, Mr. Griggs, Mr. Spivak, and Mr. Haines are reasonable.[14]

Class Counsel request a rate of $450 per hour for Ms. Tahmassian, Mr. Wilbur, and Ms. Essakhar. (Timesheets at 11.) They have practiced for seven to eight years. (Id.) According to the Real Rate Report, associates in Los Angeles who practice employment and labor law have a median rate of $416 per hour, while associates in the third quartile earn $570 per hour. (Real Rate Report at 74.) Accordingly, the Court finds that the requested rates for Ms. Tahmassian, Mr. Wilbur, and Ms. Essakhar are reasonable.

Class Counsel request a rate of $250 per hour for Mr. Kaplan. (Timesheets at 11.) Mr. Kaplan was a second-year attorney at the time of his employment with The Spivak Law Firm. (Id.) The Real Rate Report shows that the median rate for associates with fewer than three years of practice experience in Los Angeles is $476 per hour. (Id. at 38.) The median rate for litigation associates in the employment and labor practice area with less than three years of experience is $296 per hour, while associates in the third quartile earn $348 per hour. The Court finds that Mr. Kaplan's hourly rate is too low. Accordingly, the Court adjusts his hourly rate to $300 per hour.

//
//
//

---

[14] Class Counsel provided additional support for their requested hourly rates, including the declaration of counsel in a different wage class action from 2011. (Spivak Fee Mot. Decl., Ex. D.) Class Counsel also note hourly rates for Mr. Spivak that other courts have approved in 2007 and 2012, respectively. (Fee Mot. at 10; Spivak Fee Mot. Decl. ¶¶ 7–8.) The Court does not find this information helpful, as they are nearly or over ten years old and do not reflect the current prevailing rate.

Class Counsel request a rate of $300 per hour for Mr. Oyama, who is a paralegal in his thirteenth year with The Spivak Law Firm. (Timesheets at 11.) The median rate for paralegals in the employment compensation and benefits practice is $140 per hour, while paralegals in the third quartile earn $238 per hour. (Real Rate Report at 13.) Class Counsel have not provided any documentation to support Mr. Oyama's hourly rate. Accordingly, the Court finds that Mr. Oyama's rate is too high. The Court adjusts his hourly rate to $250 per hour.

Class Counsel request a rate of $250 per hour for Ms. Cortez, and a rate of $200 per hour for Ms. Greer and Ms. Reuben, all of whom are paralegals at The Spivak Law Firm. (Timesheets at 11.) Ms. Greer is in her fifteenth year at the firm, and Ms. Cortez is in her eighth year. (Id.) Ms. Reuben had seven years of experience while she was employed with the firm. (Id.) Class Counsel have not provided any documents to support the higher rate for Ms. Cortez, even though she has less years of experience than Ms. Greer and a similar amount of experience as Ms. Reuben. However, because these rates generally fall within the range of prevailing rates for similarly positioned paralegals, the Court finds that the requested rates for Ms. Cortez, Ms. Greer, and Ms. Reuben are reasonable.

Class Counsel request a rate of $200 per hour for Mr. Arora, a formerly employed law clerk. (Timesheets at 11.) For the reasons discussed above with respect to paralegal hourly rates, the Court finds that this requested rate is reasonable.

Class Counsel request a rate of $150 per hour for Ms. Rivera, Ms. Raya, Ms. Bencomo, and Ms. Kirollos, all of whom are current or former legal secretaries with The Spivak Law Firm. (Timesheets at 11.) Given the above analysis of reasonable rates for paralegals, the Court finds that these requested rates are reasonable.

### b. Hours Billed

Class Counsel's lodestar calculation accounts for 395.44 hours[15] worked on this case. Based on the submitted Timesheets, the Court finds that the time spent on the case generally is reasonable. However, the lodestar calculation cannot include "purely clerical or secretarial tasks." Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989); see also Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009). This Court has previously found that "copying and scanning documents and calendaring dates" are "purely clerical tasks," whereas "prepar[ing ] a letter to opposing counsel requesting production of documents," "prepar[ing ] deposition notices," "reviewing and organizing case files and creating and updating pleading clips" are not purely clerical tasks. Smith v. County of Riverside, 2019 WL 4187381, at *8 (C.D. Cal. June 17, 2019).

---

[15] As discussed above, Class Counsel's calculation of the total hours worked contained some discrepancies. Accordingly, this figure reflects the Court's calculation based on the number of hours reported by each firm.

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk MG
Time:  00:08

Ms. Greer reports eight hours for "[p]hotocopies," as well as time for scanning
documents and calendaring deadlines. (Timesheets at 2, 8.) These tasks are purely clerical.
Accordingly, the Court deducts 8.26 hours from Ms. Greer's hours. Ms. Greer's hours worked
are 83.19 hours, and the total hours billed for the lodestar calculation are 387.18 hours.

### c. Lodestar Multiplier

Based on the adjustments discussed above, Class Counsel's new lodestar is calculated
below. An asterisk symbol denotes those figures that have changed as a result of the Court's
adjustments:

| The Spivak Law Firm | | Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Attorney | David Spivak | 70.95 | $700.00 | $49,665.00 |
| Attorney | Johnny D. Griggs | 8.33 | $750.00 | $6,247.50 |
| Attorney | Oliva Burgos | 6.50 | $650.00 | $4,225.00 |
| Attorney | Caroline Tahmassian | 18.42 | $450.00 | $8,289.00 |
| Attorney | Gregory Wilbur | 7.54 | $450.00 | $3,393.00 |
| Attorney | Shoshana Essakhar | 4.22 | $450.00 | $1,899.00 |
| Attorney | Carl Kaplan | 111.77 | *$300.00 | *$33,531.00 |
| Paralegal | Breck Oyama | 15.97 | *$250.00 | *$3,992.50 |
| Paralegal | Nora Greer | *83.19 | $200.00 | *$16,638.00 |
| Paralegal | Lizzett Cortez | 1.98 | $250.00 | $495.00 |
| Paralegal | Liz Reuben | 0.75 | $200.00 | $150.00 |
| Law Clerk | Akshay Arora | 13.91 | $200.00 | $2,782.00 |
| Legal Secretary | April Rivera | 0.33 | $150.00 | $49.50 |
| Legal Secretary | Angelica Raya | 1.75 | $150.00 | $262.50 |
| Legal Secretary | Jessica Bencomo | 0.24 | $150.00 | $36.00 |
| Legal Secretary | Silvia Kirollos | 0.33 | $150.00 | $49.50 |
| **Total** | | ***346.18** | | ***$131,704.50** |
| **United Employees Law Group** | | **Hours** | **Hourly Rate** | **Lodestar** |
| Senior Attorney | Walter Haines | 41.0 | $675.0 | $27,675.00 |
| **Total for All Firms** | | ***387.18** | | ***$159,379.50** |

Class Counsel's new lodestar amount is $159,379.50. Because the Agreement does not
authorize more than $150,000.00 in attorneys' fees, Class Counsel applies a downward
multiplier of less than one for a final amount of $150,000.00 in requested fees. (Fee Mot. at 1.)
The Court concludes that a total fee award of $150,000.00 is reasonable.

//
//
//
//
//
//

### 2. Litigation Costs

Class Counsel request $12,745.88 in litigation costs, which is less than the $18,000.00 authorized in the Agreement. (Fee Mot. at 13; Haines Decl. ¶ 10; Agreement ¶ 9(b).) This request includes anticipated costs associated with filing the Fee Motion. ("Spivak Law Firm Costs," Spivak Fee Mot. Decl., Ex. G at 3.) "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are typically recoverable." <u>Rutti v. Lojack Corp., Inc.</u>, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012). The Court finds that all of the reported expenses are those that are typically recoverable in litigation.[16] (<u>See</u> Spivak Law Firm Costs; Haines Decl. ¶ 10.) Accordingly, the Court concludes the requested litigation costs of $12,745.88 is reasonable.

### 3. Incentive Award

Ms. Khaled requests a service award of $15,000.00 for herself as the named Plaintiff. The Court has discretion to award incentives to class representatives. <u>See</u> <u>In re Mego</u>, 213 F.3d at 463; <u>Pelletz v. Weyerhaeuser Co.</u>, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009). The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. <u>Van Vranken v. Atl. Richfield Co.</u>, 901 F. Supp. 294, 299 (N.D. Cal. 1995). This Court has previously found that service awards are "only potentially reasonable" and not appropriate for final approval when plaintiffs "provide no concrete information about their role in the mediation, time spent participating in the litigation, or information regarding whether they were guaranteed to receive benefits." <u>Gonzalez v. Burlington Coat Factory Warehouse Corp.</u>, 2020 WL 5775829, at *8 (C.D. Cal. Aug. 21, 2020). This is not intended to burden plaintiffs, but to simply require sufficient information for the Court to properly analyze the requested service award.

In the Renewed MPA Order, the Court noted that Ms. Khaled re-submitted the same declaration she submitted in support of the MPA, which the Court had denied. (Renewed MPA Order at 10.) However, additional information provided was sufficient for the Court to conclude that the requested incentive award may be reasonable. (<u>Id</u>.)

//
//

---

[16] The Court notes that one of the expenses is a $495.66 Uber trip for Ms. Khaled to travel to and from the mediation. (Spivak Law Firm Costs at 2.) Without more information, the Court is left to assume this expense is reasonable. The Court recommends that in the future Class Counsel provide a declaration or some form of verification that demonstrates the reasonableness of this type of cost.

Here, Ms. Khaled again submits the same declaration that describes her role as a fiduciary to the Settlement Class. ("Khaled Declaration," Spivak Fee Mot. Decl., Ex. O.)  However, Ms. Khaled also provides a timesheet that shows she has expended 73.38 hours on the case.  ("Khaled Timesheet," Khaled Decl., Ex. A.)  She has reviewed and produced documents, communicated with Class Counsel, responded to interrogatories, traveled for and attended two in-person depositions and the mediation, and contacted witnesses.  (See Khaled Timesheet; Fee Mot. at 15.)  Moreover, Class Counsel assert that Ms. Khaled risked a court ordering her to pay Defendants' attorneys' fees and costs if she did not prevail, due to uncertainties in the law at the time she filed suit.  (Spivak Fee Mot. Decl. ¶ 22(d).)  In addition, Ms. Khaled faces the risk that a public record of her lawsuit against an employer would negatively impact her prospects for future employment.  (Id. ¶ 22(f); Khaled Decl. ¶ 10.)  At the final fairness hearing, Class Counsel noted that this risk is greater given that Ms. Khaled intends to stay in the same line of work.  As the Agreement demonstrates, Ms. Khaled also agrees to a General Release, which is a "sacrifice." (Fee Mot. at 14–15.)  In light of these risks and burdens, Class Counsel assert that the incentive award furthers the important public policy of allowing putative class members to pursue their claims through the class vehicle.  (Id. at 18.)

While this evidence compellingly demonstrates that Ms. Khaled has actively prosecuted the case and participated in the litigation, the Court finds that the requested incentive award far exceeds what courts in this circuit have found reasonable.  See Urakhchin v. Allianz Asset Mgmt. of Am., L.P., 2018 WL 8334858, at *8 (C.D. Cal. July 30, 2018) (finding $7,500 service awards reasonable where the class representatives asserted they "actively participated in the litigation," including by "taking time off of work to attend a deposition and the mediation"); In re Yahoo Mail Litig., 2016 WL 4474612, at *11–12 (N.D. Cal. Aug. 25, 2016) (finding $5,000 service awards reasonable where the Class Representatives "actively participated in the prosecution of th[e] case by regularly communicating and working with [Class] Counsel"; "produced personal and work-related emails, responded to interrogatories, and took time away from work to testify at a deposition"; "agree[d] to release any claims for monetary damages against [the defendant] that arise out of the 'same nucleus of operative fact'"; listed how they had "significantly benefitted" from being involved in the action; and expended time and effort over nearly three years). Moreover, the incentive award is nearly eighty times the average recovery of $187.74 for individual Settlement Class Members.  See Urakhchin, 2018 WL 8334858, at *8 (finding a service award reasonable when it was "less than four times [the total average recovery for each class member]").

Under these circumstances, the Court cannot conclude that an incentive award of $15,000 is appropriate.  Accordingly, the Court reduces Ms. Khaled's incentive award to $7,500.00.

//
//
//
//
//

## V.    CONCLUSION

For the reasons above, the Court:

(1)  GRANTS final settlement approval;

(2)  GRANTS the request for attorneys' fees and AWARDS Class Counsel $150,000.00;

(3)  GRANTS the request for litigation costs and AWARDS $12,745.88;

(4)  DENIES IN PART the request for incentive award and AWARDS Ms. Khaled
     $7,500.00; and

(5)  DISMISSES the Complaint WITH PREJUDICE.


**IT IS SO ORDERED.**